[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR DEFICIENCY JUDGMENT
In this foreclosure action, a judgment of strict foreclosure entered on June 2, 1992. The mortgaged property was not redeemed and title to said real estate vested in the plaintiff on June 30, 1992.
On July 2, 1992, plaintiff filed the instant motion for a deficiency judgment. The court finds that the judgment debt as of June 2, 1992 was $316,972.98; interest has accrued from the date of judgment to the date of title vesting in the plaintiff in the amount of $1,880.76; the bill of costs were in the amount of $2,046.60; delinquent taxes in the amount of $5,350.09 were paid by plaintiff; delinquent sewer and water bills in the amount of $3,947.15 were paid by plaintiff; the court allowed a fee of $400.00 for an updated appraisal and CT Page 7238 deficiency hearing; the court allowed $500.00 as additional attorney's fee. Accordingly, the total debt as of the date of the deficiency hearing was in the amount of $331,097.58.
At the evidentiary hearing to determine the value of the property on June 30, 1992, the court heard testimony from the plaintiff's appraiser that the value of the subject premises was $250,000.00, based on his utilization of the income approach.
The defendant offered testimony by an appraiser who had originally appraised this property in 1986 when the building was extensively renovated and who did an update appraisal on July 17, 1992. Using the income approach, defendant's appraiser arrived at a value of $349,000.00.
Defendant Michael Markowitz also testified at the deficiency hearing concerning the extensive renovations in 1986 at a cost of $190,000.00, and also testified as to the rents after said renovations were completed. Said defendant also testified that during a conversation with an officer of the plaintiff bank in December, 1991, he was advised that the bank had a recent appraisal with a valuation of $384,000.00
The court continued the hearing in order to obtain a copy of such an appraisal if, in fact, one did exist. At the continued hearing, such an appraisal report was furnished (Court Exhibit #1), and the appraiser, Damien Walsh, was present by virtue of a subpoena issued by defendant's counsel. Appraiser Walsh utilized a sales comparison or market approach in arriving at a value of $384,000.00, and utilized an income approach in arriving at a value of $346,000.00.
The court notes that the plaintiff bank hired Walsh as an independent appraiser and paid for his services, but chose not to utilize his appraisal report after apparent dissatisfaction with the report, and did not disclose that report to the court.
A review of the three appraisal reports ((1) Bokoske appraisal for plaintiff; (2) Miller appraisal for defendant; and (3) Walsh appraisal) indicates that the Walsh appraisal was made in October, 1991; the Bokoske appraisal was made in March, 1992; and the Miller appraisal was made in July, 1992. The evidence also indicated, and the court finds, that there has not been any appreciable change in the value between October, 1991 and June 30, 1992.
The principal differences in the appraisals under the income approach is that Bokoske utilized a 25% vacancy allowance CT Page 7239 in determining gross income, while Miller and Walsh utilized a 10% vacancy allowance. Miller testified that he usually would apply a 5% vacancy rate, but due to the poor economic conditions, he increased the vacancy rate to 10%. The 25% vacancy allowance would substantially reduce the income stream and would reduce the ultimate value of the property. In addition, Bokoske applied $15,000.00 in annual expenses to determine net income, while Miller and Walsh applied approximately $10,000.00 in annual expenses to determine net income. With a lower net income, again the value is reduced.
The court concludes that the 10% vacancy allowance is more reasonable than 25%. Appraiser Bokoske testified that he used 25% due to the fact that 29% of the building was vacant at the time of his appraisal and for some time prior thereto. On that basis, a building that was completely vacant at the time of appraisal would have no value at all. Market rental values should be utilized together with a reasonable vacancy allowance. Further, the court concludes that the annual expenses set forth in the Walsh and Miller appraisals were more appropriate than the Bokoske appraisal, since a building of this size would be owner-managed as opposed to hiring professional management.
All appraisers testified that the subject premises were in excellent condition. The defendant owner testified that upon realizing at the end of 1991 that a foreclosure action was about to be instituted, he expended very little effort to obtain tenants, which partly explains the vacancy problem at the subject premises.
For all the foregoing reasons, the court finds the value as of June 30, 1992 to be $346,000.00. Since the value of the subject premises exceeds the previously found debt, the plaintiff's motion for deficiency judgment is denied.
Accordingly, judgment may enter for the defendant with costs, including a sum of $500.00 as an allowance for defendant's appraisal.
JOSEPH H. GOLDBERG SENIOR JUDGE CT Page 7240